IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

*vs*.                           CRIMINAL ACTION NO. 2:07CR12

RONALD CHRISTOPHER MAYLE,

       Defendant.

## REPORT AND RECOMMENDATION/OPINION

On the 31st day of July 2007, came the Defendant, Ronald Christopher Mayle, in person and by his counsel, George J. Cosenza, and also came the United States by its Assistant United States Attorney, Stephen D. Warner, for hearing on Defendant's Motion to Suppress (Docket Entry 18). The Court notes that this hearing was continued from an earlier hearing held on June 4, 2007, subsequent to the Government's production of additional evidence. Also, on June 12, 2007, Defendant requested the trial in this matter be continued until September and filed a Waiver of Speedy Trial. The Court granted the motion to continue trial, which is now set for September 18, 2007.

Defendant's original Motion to Suppress moved the Court to suppress any and all evidence seized from Defendant's residence pursuant to that certain search warrant issued on the 4th day of November, 2006, by Kathi S. McBee, Barbour County Magistrate, on the following grounds:

1.     The affidavit does not contain sufficient information to establish probable cause for the issuance of a search warrant; and

2.     The affidavit is based upon hearsay information provided by a confidential informant or informants without containing information as to the informant'(s) reliability or credibility.

**Statement of Facts**

On November 3rd, 2006, Sgt. R.L. Hynes of the Barbour County, West Virginia Sheriff's Department sought a search warrant for the residence of the defendant, located in Barbour County, West Virginia. Sgt. Hynes executed an affidavit, which he then presented to Barbour County Magistrate Kathi S. McBee. Magistrate McBee issued the search warrant, which was executed on Defendant's home on November 4, 2006. Items were seized from the home including, but not limited to, controlled substances, firearms, and United States currency.

**Discussion**

Defendant argues that the fruits of the November 4, 2006, search should be suppressed because of defects in the affidavit presented by Sgt. Hynes to Magistrate McBee. At the time he filed his motion, Defendant correctly described the grounds for the search warrant, as stated in the affidavit, as follows:

> Over the past 2 months, the Barbour County Sheriff's Department has received information from various sources that the within named defendant, Chris Mayle, has been trafficking in narcotics out of his residence. Anonymous tips have been verified by first hand observations of members of the Sheriff's Department. Confidential informants have also confirmed that the defendant has been selling cocaine from his residence and have been in the residence within the past few days. A separate informant advised . . . .

Here the affidavit ends. In its Response to Defendant's Motion to Suppress, however, the Government admits:

> As it would turn out, there is a second page to the search warrant affidavit. The United States apologizes for not disclosing the second page to defendant's counsel earlier. . . .

The Government attached what it referred to as the "entire search warrant, including the second page of affidavit . . . ." The second page appears to be a continuation of the first, which ended with "a

separate informant advised . . ." The second page states: "That the defendant has traded cocaine for stolen property in the past. The defendant had traded a four wheeler that was reported stolen by Charles Moore for a quantity of cocaine. This four wheeler was seen in the block garage within the last few days."

The United States then argues that the search warrant does support a finding of probable cause, and, if not, is saved by the good faith exception announced in United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

At the first hearing, Sgt. Hynes testified he is employed by the Barbour County Sheriff's Department. He prepared the search warrant affidavit and search warrant and presented them to Magistrate McBee on November 3, 2006. When he went to get the search warrant from the Magistrate, he had the second page attached to the affidavit, but testified that the magistrate informed him that if all the information was not typed on the cover or first page, it would not fall under the "four-corners rule." Sgt. Hynes testified he left the second page with the magistrate anyway, and she approved the search warrant. She did not give him back the second page. Sgt. Hynes also testified that he believed the magistrate only considered the first page, because it was "within the four corners." Although he could not be positive what she considered, he testified she gave him back only the first page. He discussed the second page with Magistrate McBee but he did not sign the second page.

Sgt. Hynes testified that he had only prepared three or four search warrants in his career. He had never used a second page before. When asked if there had been any thought in his mind that he should not execute the search warrant, Sgt. Hynes testified that he did not question it.

Another problem arose during the hearing because it was noted that the Search Warrant

disclosed by the Government was not signed by the officer. Sgt. Hynes testified that he had signed it and turned it in to the magistrate, however. He assumed the magistrate still had the signed copy. Neither Sgt. Hynes nor the Government had a copy of the affidavit and application for search warrant. Sgt. Hynes testified that the document was prepared in the Sheriff's Office. He himself did not type it. Chief Deputy Hawkins typed the document (by filling in the blanks on a computer form). Sgt. Hynes testified he did not expressly recall signing it.

Sgt. Hynes testified he had received information from a confidential informant. He then talked to the Sheriff and Chief Deputy and the paperwork was based on collective information from all three.

The Court inquired if anyone had an original of the affidavit and search warrant. The Assistant United States Attorney responded that he would try to discover if the magistrate had the affidavit. At that point the exhibits were admitted and the Court recessed and continued the hearing to give the United States the opportunity to locate the original affidavit and search warrant, if they existed.

On June 6, 2007, the United States filed a "Supplemental Response to Suppression Motion" (Docket Entry 25), providing the Court and counsel with "a complete set of documents on file in the Barbour County Magistrate Court, regarding the search warrant at issue before this Court." Notably, the newly-produced documents contained a separate "Affidavit and Complaint for Search Warrant," signed by Sgt. Hynes, apparently resolving Sgt. Hyne's confusion and the issue of whether he had signed the affidavit. Further, at the bottom of the "Affidavit and Complaint for Search Warrant" is contained, in different typeface, the information previously produced to Defendant and the Court as the "second page" of the search warrant. The documents all contain the raised seal of the Barbour

4

County Magistrate Clerk, and the attestation on each page is in blue ink.

Upon receipt of this supplemental information, the Court convened a second hearing. The United States called Barbour County Magistrate Katherine McBee as a witness. Magistrate McBee identified Sgt. Hynes in the courtroom and identified the search warrant issued by her to Sgt. Hynes. She testified that the copies she identified appeared to be true and accurate copies. She also testified she signed the affidavit and two copies of the search warrant, while Sgt. Hynes signed the affidavit.

Magistrate McBee vaguely recalled when Sgt. Hynes came to her office, although she was not sure of the time or date. She had known Sgt. Hynes for several years. She did not know whether he had ever previously submitted a complaint for a search warrant. Magistrate McBee testified that she had only rarely issued search warrants, but that the usual procedure to obtain a search warrant was that the law enforcement officers would fill out an affidavit and sign it. In this case, Sgt. Hynes had brought the affidavit with him. The affidavit was completed in her office without her assistance. There had been some additional information on a separate sheet, which Sgt. Hynes added to the first page in her office. While she did not instruct him to do that, she may have told him that it was better to have all the information on one sheet. She did not recall if she expressly used the phrase "four-corners," but testified that she did commonly use that phrase. She did not remember if she instructed Sgt. Hynes to add the information from the second page to the first page, but believed she may have discussed it with him. She testified she took no other testimony or evidence from Sgt. Hynes, however, and considered only the affidavit.

Although she did not remember seeing Sgt. Hynes actually type in the portion of the affidavit that had originally been on a second page, Magistrate McBee testified that she did remember that that portion was on the affidavit when she signed it.

Magistrate McBee testified she did not have to fill in any of the search warrant before she signed it because it was computer-generated. She agreed that the information typed onto the affidavit did not appear on the search warrant. Although the information was on the affidavit when she signed it, it had apparently not been transferred over to the search warrant.

Following the second hearing, Defendant, through counsel, argued that he still did not believe the affidavit was sufficient to establish probable cause for the search, even with the second page included, as it still relied on various unidentified sources and anonymous tips that were "verified" by some means. Additionally, some of the information might be stale. Finally, counsel for Defendant requested additional time to research the issue of the ramifications of the information on the affidavit not being contained in the actual search warrant. The United States argued that the affidavit was sufficient to establish probable cause for the search, and, if not, relied on the good faith exception stated in Leon to save the evidence seized during the search from suppression.

## Discussion

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

## The Good Faith Exception (United States v. Leon)

The Government argues that, even if the information in the affidavit were found to be insufficient for a finding of probable cause to issue a search warrant, the evidence seized in the search should not be suppressed pursuant to the "good faith exception" stated in U.S. v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 677 (1984).

Where, as here, a defendant challenges both the probable cause determination and application of the good faith exception, the Court may proceed directly to the question of good faith. See U.S. v. Perez, 393 F.3d 457 (4th cir. 2004.)

The United States Supreme Court has held that the exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

Leon at 915, 104 S. Ct. at 3417. Further:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

Id. at 918, 104 S. Ct. 3 at 3419. The Supreme Court concluded:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained

> in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

Id. at 922, 104 S. Ct. at 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. at 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the

8

truth;
(2) the magistrate wholly abandoned his detached and neutral judicial role;
(3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
(4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

In the case at bar there is no evidence to support an allegation that Sgt. Hynes misled the magistrate with information he knew was false or would have known was false but for his reckless disregard for the truth. In fact, the undersigned finds Sgt. Hynes' testimony regarding the circumstances of his investigation, the affidavit, the search warrant, and the execution of the search warrant completely credible. There is also no evidence to support an allegation that Magistrate McBee "wholly abandoned [her] judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)." U.S. v. Leon, 468 U.S. 897.[1]

The undersigned further finds the search warrant described with particularity the place to be searched and the things to be seized.

The sole remaining question regarding the issuance of the first search warrant is therefore

---

[1] Regarding the actions of the Town Justice in Lo-Ji, the Supreme Court stated:
He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer. When he ordered an item seized because he believed it was obscene, he instructed the police officers to seize all "similar" items as well, leaving determination of what was "similar" to the officer's discretion. Indeed, he yielded to the State Police even the completion of the general provision of the warrant. Though it would not have validated the warrant in any event, the Town Justice admitted at the hearing to suppress evidence that he could not verify that the inventory prepared by the police and presented to him late that evening accurately reflected what he had ordered seized.

whether "the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. The question is not whether the magistrate issuing the search warrant had a "substantial basis" to determine probable cause. The Fourth Circuit addressed the distinction in U.S. v. Bynum, 293 F.3d 192 (4th Cir. 2002), stating :

> "Substantial basis" provides the measure for determination of whether probable cause exists in the first instance. *See United States v. Harris*, 403 U.S. 573, 581, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). If a lack of a substantial basis also prevented the application of the *Leon* objective good faith exception, the exception would be devoid of substance. In fact, *Leon* states that the third circumstance prevents a finding of objective good faith only when an officer's affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405 (citation omitted). This is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.

*Id.* at 196.

A review of Sgt. Hynes' affidavit does not indicate it "was so lacking in indicia of probable cause as to render official belief in its existence <u>entirely unreasonable</u>." (Emphasis added). This is not a case of a "bare bones" affidavit.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). Here Sgt. Hynes stated under oath in his affidavit that anonymous tips from various informants had been received. These tips were verified by first hand observations of members of the Sheriff's Department. The U.S. Supreme Court expressly found that a magistrate has the "authority . . . to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant." Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

10

Nor is there any indication in this case of any sort of bad faith by Sgt. Hynes. He did not "craftily choose his words in an attempt to clothe [his affidavit] with 'genuine substance.'" See U.S. v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). As already stated, the undersigned finds Sgt. Hynes completely credible, if lacking in experience regarding search warrants. Unfortunately, as Magistrate McBee testified, she too lacked experience with search warrants. The exclusionary rule, however, operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). It "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon at 915, 104 S. Ct. at 3417. The Court does not find Sgt. Hynes committed any misconduct here. Further, the Court does not find that Sgt. Hynes "had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id.

The undersigned finds Sgt. Hynes' affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. The undersigned therefore finds Sgt. Hynes' reliance on the search warrant issued by Magistrate McBee was objectively reasonable. The good faith exception, therefore, renders the evidence seized in the search admissible, even if a court were to find the search warrant was not supported by probable cause.

**Information Contained in Affidavit but Omitted from Warrant**

Defendant, through counsel, requested additional time to research the ramification of the omission from the actual search warrant of the "second page" information that was retyped by Sgt. Hynes onto the bottom of the first page of the affidavit. The Court denied counsel the additional time, stating the Court would research the issue itself. Having done so, the Court finds no cases or

11

law precisely on point. In U.S. v. Grubbs, 547 U.S. 90 (2006), however, the Supreme Court stated: "The Fourth Amendment [] does not set forth some general 'particularity requirement.' It specifies only two matters that must be 'particularly describ[ed] in the warrant: the place to be searched and the persons or things to be seized.'" Further: "The Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential 'precondition to the valid exercise of executive power.'" Id. Therefore the search warrant itself need not contain all the facts set forth in the affidavit; rather, it simply must describe with sufficient particularity the location to be searched and the items to be seized. The search warrant at issue meets these requirements.

## **RECOMMENDATION**

For all the above reasons, the undersigned finds that evidence seized from Defendant's residence pursuant to the search warrant issued to Sgt. Hynes by Magistrate McBee was lawfully seized. The undersigned therefore respectfully **RECOMMENDS** Defendant's Motion to Suppress [Docket Entry 18] be **DENIED**.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins**,** 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn,

474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 15th day of August, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE